# STATE OF MICHIGAN

# COURT OF APPEALS

FOR PUBLICATION
January 9, 2018
9:00 a.m.

*In re* Miller Minors.

No. 338871
Jackson Circuit Court
Family Division
LC No. 16-005854-NB;
        16-005855-NB

Before: O'CONNELL, P.J., and BECKERING and STEPHENS, JJ.

O'CONNELL, P.J.

Petitioner, Adoption Associates, a child placement agency, appeals by leave granted the trial court's order denying petitions to terminate parental rights concerning children surrendered under the Safe Delivery of Newborns Law, MCL 712.1 *et seq*. The trial court concluded that the Safe Delivery of Newborns Law only applied to the mother of the surrendered children but not to the legal father. We reverse.

## I. BACKGROUND

In August 2016, a woman gave birth to twins. She surrendered the twins to the hospital the day after they were born under the Safe Delivery of Newborns Law. The surrendering mother did not provide her address or marital status, she gave no other indication that she was married, and she declined to identify the father. Adoption Associates took custody of the children and placed them with prospective adoptive parents. In September 2016, the adoption agency filed petitions to terminate the parental rights of the surrendering parent and the nonsurrendering parent.

Also in September 2016, Adoption Associates requested the children's birth certificates for purposes of the adoption. In October 2016, the Vital Records Office notified the agency that it could not provide the birth certificates because of an "unresolved paternity issue." After the

-1-

Vital Records Office learned that the mother was married, although it is not clear how, it produced birth certificates in December 2016 listing the mother's husband as the father.[1]

This development raised the issue whether the adoption agency had a duty to notify the man listed as the father on the birth certificates about the surrender of the children. The adoption agency protested that it did not. In a written order, the trial court concluded that the Safe Delivery of Newborns Law only applied to the mother in this case, but not the legal father identified on the birth certificates.

## II. ANALYSIS

This case concerns the intersection of the Safe Delivery of Newborns Law with the presumption of legitimacy. We review questions of statutory interpretation de novo. *Parks v Parks*, 304 Mich App 232, 237; 850 NW2d 595 (2014). The primary goal of statutory interpretation is to effectuate the Legislature's intent. *Sinicropi v Mazurek*, 273 Mich App 149, 156; 729 NW2d 256 (2006). We do so by applying the statute as written if it is unambiguous. *Parks*, 304 Mich App at 237-238.

This Court reads the statute as a whole and generally reads statutes covering the same subject matter together. *Sinicropi*, 273 Mich App at 157. However, the Safe Delivery of Newborns Law provides that neither "a provision in another chapter of this act" nor the Child Custody Act, MCL 722.21 *et seq*., apply to the Safe Delivery of Newborns Law unless specifically stated. MCL 712.2(3).

### A. SAFE DELIVERY OF NEWBORNS LAW

The Safe Delivery of Newborns Law "encourage[s] parents of unwanted newborns to deliver them to emergency service providers instead of abandoning them[.]" *People v Schaub*, 254 Mich App 110, 115 n 1; 656 NW2d 824 (2002). The statute permits a parent to surrender a child to an emergency service provider within 72 hours of the child's birth. MCL 712.1(2)(k); MCL 712.3(1). When the emergency service provider takes temporary custody of the child, the emergency service provider must reasonably try to inform the parent that surrendering the child begins the adoption process and that the parent has 28 days to petition for custody of the child. MCL 712.3(1)(b) and (c). The emergency service provider must furnish the parent with written notice about the legal custody process. MCL 712.3(1)(d). The emergency service provider should also try to inform the parent that, before the child can be adopted, "the state is required to make a reasonable attempt to identify the other parent, and then ask the parent to identify the other parent." MCL 712.3(2)(e). Finally, the emergency service provider must take the newborn to a hospital, if the child was not born in the hospital, and the hospital must take temporary protective custody of the child. MCL 712.5(1). The hospital then notifies a child placement agency about the surrender, and the child placement agency has various obligations, including

---

[1] Effective January 18, 2018, a birth certificate for a newborn surrendered under the Safe Delivery of Newborns Law must list the parents as " 'unknown' " and the newborn as " 'Baby Doe.' " 2017 PA 142.

making "reasonable efforts to identify, locate, and provide notice of the surrender of the newborn to the nonsurrendering parent" within 28 days, which may require "publication in a newspaper of general circulation . . . ." MCL 712.7(f).

Either the surrendering parent or the nonsurrendering parent may file a petition to gain custody of the child within 28 days of surrender and published notice of surrender, respectively. MCL 712.10(1). If neither the surrendering parent nor the nonsurrendering parent files a petition for custody within 28 days of surrender or notice of surrender, the child placement agency must immediately file a petition with the court to terminate the rights of the surrendering parent and the nonsurrendering parent. MCL 712.17(2) and (3). The agency "shall present evidence that demonstrates that the surrendering parent released the newborn and that demonstrates the efforts made by the child placing agency to identify, locate, and provide notice to the nonsurrendering parent." MCL 712.17(4). If the agency meets its burden of proof by a preponderance of the evidence, the trial "court shall enter an order terminating parental rights of the surrendering parent and the nonsurrendering parent under this chapter." MCL 712.17(5). The Safe Delivery of Newborns Law does not define "parent," surrendering parent," or "nonsurrendering parent." See MCL 712.1(2) (definitions).

## B. PRESUMPTION OF LEGITIMACY

When a child is born during a marriage, the child is presumed to be the issue of that marriage. *Barnes v Jeudevine*, 475 Mich 696, 703; 718 NW2d 311 (2006). The Revocation of Paternity Act (RPA), MCL 722.1431 *et seq*., defines a "presumed father" as "a man who is presumed to be the child's father by virtue of his marriage to the child's mother at the time of the child's conception or birth." MCL 722.1433(3). The RPA governs actions to determine that a presumed father is not a child's father. MCL 722.1435(4).

A biological father has no standing to seek a declaration of paternity under the Paternity Act, MCL 722.711 *et seq*., when the child's mother is married to another man unless a court has previously determined that the child was born out of wedlock. *Pecoraro v Rostagno-Wallat*, 291 Mich App 303, 311-313; 805 NW2d 226 (2011). The Paternity Act defines a child born out of wedlock as "a child begotten and born to a woman who was not married from the conception to the date of the birth of the child, or a child that the court has determined to be a child born or conceived during a marriage but not the issue of that marriage." MCL 722.711(a). Until the biological father of a child obtains a declaration of paternity, he has no lawful rights to a child who has a presumed father because "a child may have only one legal father." *Helton v Beaman*, 304 Mich App 97, 106; 850 NW2d 515 (2014), aff'd 497 Mich 1001 (2015).

## C. SYNTHESIS

We conclude that the Safe Delivery of Newborns Law does apply to the husband of a surrendering mother. The trial court's decision and the nonsurrendering parent's argument rely on the fallacy that the children of a married mother could have two legal fathers. The trial court and the nonsurrendering parent were concerned about a situation in which an order terminating the parental rights of the mother and the nonsurrendering parent would only terminate the rights of a biological father but not the husband of the surrendering mother. In this scenario, the

husband of the surrendering mother could seek to assert his parental rights to the surrendered child after the child has been adopted.

However, a child may have only one legal father, *Helton*, 304 Mich App at 106, so the legal father is presumed to be the mother's husband until that presumption is defeated, *Barnes*, 475 Mich at 703. The Safe Delivery of Newborns Law tests this presumption through DNA testing if either a presumed or putative father attempts to gain custody of the child, leaving only one as the true legal father. See MCL 712.11(1).

If no one claims paternity, the Safe Delivery of Newborns Law provides for termination of the parental rights of the nonsurrendering parent. MCL 712.17(3). The Safe Delivery of Newborns Law refers to the "nonsurrendering parent" in the singular, MCL 712.7(f), MCL 712.10(1), and MCL 712.17, and requires a party claiming paternity to submit to DNA testing, MCL 712.11(1), so the parental rights at issue in a surrender proceeding concern the biological father. If a presumed father later appeared to challenge the children's adoption, he would be precluded from asserting paternity because he was either the biological father whose parental rights were terminated or he would have to demonstrate that he was not the biological father whose parental rights were terminated, effectively defeating the presumption of legitimacy. Accordingly, there are no circumstances in which a party would later be able to challenge the adoption by claiming paternity and asserting his parental rights.

Applying this discussion to the present case, the husband of the surrendering mother was presumed to be the legal father of the children by virtue of the marriage. See MCL 722.1433(e). If the husband had filed a petition for custody of the children within 28 days of published notice of the surrender, see MCL 712.10(1), he would have been required to submit to a DNA test to determine paternity, see MCL 712.11(1). If he were not the children's biological father, the trial court would have dismissed his petition for custody. See MCL 712.11(5). This dismissal would be consistent with the rules governing the presumption of legitimacy. The DNA test would have demonstrated that the children were not the issue of the marriage, thereby defeating the presumption of legitimacy. See 722.711(a); *Barnes*, 475 Mich at 703. On the other hand, if the husband of the surrendering mother were the biological father, the trial court would have held a hearing to determine the children's custody. See MCL 712.14. If the biological father never claimed paternity, the trial court would have terminated the parental rights of the biological father. See MCL 712.17(3).

In this case, no one claimed paternity. If the trial court terminates the parental rights of the nonsurrendering parent, and the husband of the surrendering mother later seeks to assert his parental rights, he would have to demonstrate that he was not the biological father to show that the order terminating parental rights did not apply to him. However, in doing so, he would be defeating the presumption of paternity, and he would be without parental rights to assert to disrupt an adoption. Accordingly, the Safe Delivery of Newborns Law does apply to the legal father in its termination proceedings.

    We reverse and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

                                            /s/ Peter D. O'Connell
                                            /s/ Jane M. Beckering
                                            /s/ Cynthia Diane Stephens